IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SARAH JANE BECK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-00508-RK |
| | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION; | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff Sarah J. Beck's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

### Background

Plaintiff filed a protective application for disability and disability insurance benefits under Title II of the Social Security Act on December 13, 2019, with an alleged onset date of disability of October 18, 2018, through December 31, 2020, the last date insured. (*See* Tr. at 354.) Following an administrative denial, a hearing was held before an ALJ on June 13, 2022, after which the ALJ issued an unfavorable decision. (Tr. at 354-731.)

Plaintiff sought review by the Appeals Council, which was granted. (Tr. at 411.) The Appeals Council indicated that it "plan[ned] to issue a corrective, unfavorable decision" agreeing with the findings and conclusion of the ALJ that Plaintiff was not disabled during the relevant period but that it intended to "evaluate the opinions of the State agency medical consultants" and would "find them partially persuasive."[1] (Tr. at 412.) Plaintiff did not submit any additional statement or evidence. (*See* Tr. at 4.)

---

[1] In the prior decision, the ALJ had not evaluated the prior administrative medical findings in assessing Plaintiff's residual functional capacity, which the Appeals Council determined was an error of law. (Tr. at 412.)

In its decision, the Appeals Council adopted the ALJ's findings or conclusions, in particular, that:

> the claimant has not engaged in substantial gainful activity since October 18, 2018, that the claimant has severe impairments of left hip avascular necrosis, status-post arthroplasty; right hip stage 1 avascular necrosis; celiac disease; and anxiety, which do not meet or equal in severity an impairment in the Listing of Impairments, that she is not capable of performing her past relevant work, but that there is a significant number of jobs the claimant is capable of performing.

(*Id.*)  In so doing, the Appeals Council found that the opinions of State agency medical consultants Judee Bland, M.D., and Kristi Curry, M.D., were "partially persuasive," explaining that it found the opinions "well supported with citation to the medical evidence that was available at the time of their review," but noting that the opinions

> are only somewhat consistent with the overall record, including the objective radiographic evidence (Exhibit 5F, page 16), examination evidence (Exhibit 7F, pages 32, 49); and the claimant's allegations regarding bilateral hip pain and limitations in standing and walking at the hearing, which supports greater limitations.

(Tr. at 5.)  The Appeals Council expressly agreed with the ALJ's assessment (1) of the opinions of the State agency psychological consultants as unpersuasive "because their opinions are not supported by or consistent with evidence that supports greater limitations," and (2) as to Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms because the statements "are not entirely consistent with the medical evidence and other evidence in the record."

(*Id.*)  As to Plaintiff's mental impairment, the Appeals Council adopted the ALJ's conclusions

> regarding the degree to which the claimant's mental impairment restricts the ability to understand, remember, or apply information; presents difficulties in interacting with others; results in deficiencies in concentration, persistence or maintaining pace; and limits the ability to adapt or manage oneself.

(*Id.*)

Ultimately, the Appeals Council agreed with the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") set out as follows:

> The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities:  she could have performed sedentary work as defined in 20 CFR 404.1567(a), except standing and walking were limited to two hours in an eight hour workday; sitting was limited to six hours in an eight hour workday; she required the ability to shift at will from side to side while seated, but she could remain on task while shifting; lifting and carrying were limited to five pounds frequently, and 10 pounds occasionally; reaching was limited to frequent; she could not push or pull levers with the upper extremities; handling, fingering,

and feeling were limited to frequent; she could not use air or vibrating tools; she could not stand on vibrating surfaces; climbing ramps or stairs, stooping, squatting, and crouching were limited to 15% of the workday; she could not climb ropes, ladders, or scaffolds; she could not kneel or crawl; she could not use foot controls; she could not have concentrated exposure to dust, smoke, or fumes; she could not have exposure to temperature extremes of heat or cold; she could not work under hazardous conditions; she could not perform outdoors work; she could not work around moving machinery ("moving machinery" is defined as machinery that does not have a fixed base); work was limited to simple, routine, and repetitive tasks and simple decision-making; she had the ability to adapt to these levels of functioning and decision-making; and contact with the public, coworkers, and supervisors was limited to occasional. In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the sedentary exertional level.

(Tr. at 6-7.) The Appeals Council found, consistent with the ALJ's conclusion, that Plaintiff was not disabled during the relevant time period because, considering her age and RFC, among other factors

> there are a significant number of jobs in the national economy which she could perform, including document preparer, Dictionary of Occupational Titles number 249.587-018, which is an unskilled, sedentary job, Specific Vocational Preparation (SVP) of 2, with 44,000 positions in the national economy; final assembler, DOT 713.687-018, which is an unskilled, sedentary job, SVP of 2, with 25,000 jobs in the national economy; and patcher, DOT 723.687-010, which is an unskilled, sedentary job, SVP of 2, with 30,000 jobs in the national economy.

(Tr. at 7.) Plaintiff appeals.

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing

3

*Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

### I. Mental RFC

First, Plaintiff argues on appeal that the mental RFC determination is not supported by substantial evidence. Plaintiff argues that to the extent the ALJ (and the Appeals Council) found unpersuasive the opinions of the State agency psychological consultants, the RFC determination is unsupported where the record contains no other opinions as to Plaintiff's functional limitations stemming from her severe mental impairment (anxiety). Notably, the state psychological consultants each concluded that the medical record did not support finding any "mentally medically determinable impairment." (*See* Tr. at 331, 344.)

Plaintiff argues that in formulating her RFC, then, the ALJ improperly relied on his own evaluation of the medical evidence and medical expertise where the proper course would have been to fully and fairly develop the record by obtaining the opinion of another psychologist or psychiatrist to opine on Plaintiff's functional capacity in light of her anxiety. Defendant argues that there is no reversible error to the extent (1) the ALJ found the prior opinions unpersuasive in light of Plaintiff's own testimony regarding her mental health symptoms, and (2) that substantial medical evidence supports the ALJ's mental RFC determination based on Plaintiff's testimony, medical records (showing she was prescribed Xanax during this time period for anxiety), and "treatment notes describing Plaintiff as generally alert and oriented with good concentration, a normal or anxious mood, good judgment, and normal memory."

In determining a claimant's RFC, the ALJ must consider "all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (citation and quotation marks omitted). The Eighth Circuit has firmly established that a claimant's RFC "is a medical question" and thus, the ALJ's RFC assessment "must be supported by some medical evidence of the claimant's ability to function in the workplace." *E.g.*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation and quotation marks omitted). While an ALJ's RFC assessment need not rely on any *specific* medical opinion, there must be *some* "medical evidence"

4

of the claimant's functional work abilities. *Id.* In *Hensley*, for example, the Eighth Circuit found that a "To Whom it May Concern" letter from the claimant's treating physician "summarizing . . . [the doctor's] disability exam[2] that addressed each of [the claimant]'s severe impairments," in conjunction with "extensive . . . treatment records" "provided adequate medical evidence of [claimant]'s ability to function in the workplace." *Id.* (recognizing that "[i]n the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's [RFC] findings" (citation and quotation marks omitted)). At bottom, an ALJ's RFC assessment must be supported by some identifiable medical evidence concerning the claimant's medically evaluated functional limitations. *See Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007) (holding that "facts, observations, and medical conclusions [by claimant's treating physician, treating her for depression, anxiety, and insomnia] which bear directly on the extent of [claimant]'s ability to function in a work environment" provided sufficient medical evidence to support the ALJ's mental RFC assessment).[3] At the same time, because the claimant bears the burden of proof, though, "the claimant's failure to provide

---

[2] The Eighth Circuit in *Hensley* described the "disability exam" findings as follows:

At a May 2012 disability exam, Dr. McKelvey noted that [claimant] was "well appearing," in "no acute distress," "with no restriction in mobility," and "[f]ully alert and oriented." . . . The letter reported that [claimant]'s back pain had "been stable for the past year" though severe at times; he was no longer using a cane; and he had "full forward flexion," normal strength, and a normal gait. Dr. McKelvey reported that [claimant]'s right knee pain was "stable" and the knee was less painful on palpation, had a full range of motion, flexion, and extension, and could bear weight without a brace or crutch. Treatment of [claimant]'s facial tics was continuing, thus far with "limited results." His symptoms of PTSD and depression were being treated with two medications and were "stable," though he complained of migraines.

829 F.3d at 930.

[3] This does not mean, as Defendant suggests, that medical evidence is the only type of evidence the ALJ can consider in formulating a claimant's RFC or that the ALJ is necessarily precluded from accounting for a claimant's own statements about her abilities. The requirement that the ALJ's RFC determination be supported by some medical evidence is not mutually exclusive to the ALJ's duty to consider all the relevant evidence in the record, including the medical records and the claimant's own statements. As this Court has recognized: "It is not true that the RFC can be proved *only* with medical evidence. However, there must be some medical evidence to support the finding." *Buckner v. Colvin*, No. 13-5159-CV-SW-ODS, 2014 WL 4162525, at *2 (W.D. Mo. Aug. 20, 2014) (citations omitted); *accord Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively.").

5

medical evidence . . . should not be held against the ALJ when there *is* medical evidence that supports the ALJ's decision." *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The Court is satisfied that the mental RFC determination here is properly supported by the requisite identifiable medical evidence. In evaluating Plaintiff's statements regarding the limiting effects of her anxiety, the ALJ (and the Appeals Council by adopting the ALJ's conclusions in this regard) discussed Plaintiff's medical records that indicated normal and positive neurologic and appearance findings. In particular, these findings occurred in the context of follow-up office visits and ER visits during which Plaintiff was diagnosed or treated for anxiety or related symptoms such as insomnia, for which she had been previously prescribed Xanax. (Tr. at 692, 825, 977, 981.) The Court discerns no reversible error here in the mental RFC determination as supported by medical evidence; the ALJ did not improperly substitute his expertise and was not required to obtain additional evidence on this record.[4]

## II. Physical RFC

Next, Plaintiff argues that the ALJ's physical RFC determination is not supported by substantial evidence, either. In particular, Plaintiff points to the Appeals Council's finding the opinions of Dr. Bland and Dr. Curry as only "partially persuasive" without explaining how the cited medical records are "somewhat consistent" with their respective opinions. To the contrary, the Appeals Council specifically referenced evidence in the record as the reason it found the opinions were only somewhat consistent, in particular, objective radiographic imaging, examination evidence, and Plaintiff's own allegations regarding bilateral hip pain and limitations in standing and walking. As with the mental RFC determination, the Court notes that the Appeals Council's (and ALJ's) physical RFC finding, particularly regarding her ability to stand and walk, among other limitations, was *more* restrictive than the RFCs formulated by Dr. Bland and Dr. Curry.

---

[4] And moreover, the Court notes that the ALJ's mental RFC determination was favorable to Plaintiff as more restrictive than what the record may support otherwise. As a general rule, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995); *see also Wiley v. Colvin*, No. 4:14CV330 TIA, 2015 WL 1411943, at *9 (E.D. Mo. Mar. 26, 2015) (Where "[n]othing before the Court shows, and indeed plaintiff does not argue, that a less restrictive mental RFC would have resulted in a finding of disability . . . any such error was harmless.") (citations omitted). Even if the record may have supported less restrictive (or even no) mental functional limitations, it is not the Court's role to re-weigh the evidence on appeal. *Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019). It is sufficient here that the Court finds no reversible legal error on the record as set out above.

In addition, Plaintiff also argues—like as to the mental RFC assessment—the physical RFC determination is not supported by medical evidence. The Court disagrees for similar reasons as above. The medical record substantially supports the physical RFC finding. The Appeals Council found persuasive in part—and thus included most of—the opinions of Dr. Bland and Dr. Curry in its own RFC assessment. Plaintiff's argument that the Appeals Council's decision imposing *additional* limitations as to Plaintiff's functional limitations requires reversal because no medical evidence supports those additional limitations is without merit. The Court discerns no basis for reversal on this argument, either.

Finally, Plaintiff argues that the physical RFC assessment is not supported by substantial evidence because the ALJ failed to assess additional impairments of paresthesia of the right face and the upper and lower extremities and fibromyalgia. Only medically terminable impairments must be considered in the RFC determination. *See* Social Security Ruling 96-8p, 1996 WL 374184. As Defendant observes (and Plaintiff does not contest), she did not allege either paresthesia or fibromyalgia as severe impairments in her application for disability benefits. Nevertheless, the Court acknowledges that Plaintiff testified at the hearing that she had been diagnosed with fibromyalgia which "can make [my] muscles feel real achy like you know something is wrong" and that it affects her differently on different days. (Tr. at 307.) For either paresthesia or fibromyalgia, though, Plaintiff points to nothing more in the medical records than, at best, a diagnosis of each. (*See* Tr. at 98, 946.) More is required to be a medically determinable impairment for purposes of the ALJ's disability analysis, though. *See* 20 C.F.R. § 404.1521. And as to fibromyalgia, much of the medical records on which Plaintiff relies arose outside the relevant time period. Ultimately, Plaintiff did not carry her burden to demonstrate a severe medically determinable impairment (or to prove her RFC) in relation to the asserted impairments of paresthesia and fibromyalgia for consideration of her protective application for disability benefits. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

### III. Step Five

Next, Plaintiff argues that the ALJ erred in finding that based on her RFC, she could perform "a significant number of jobs in the national economy," including document preparer (44,000 jobs), final assembler (25,000 jobs), and patcher (30,000 jobs). Plaintiff argues that the vocational expert's testimony that a hypothetical person with Plaintiff's RFC could perform the

job of document preparer (DOT 249.587-018) is inconsistent to the extent the job of document preparer is a level 3 reasoning job where Plaintiff's RFC included a limitation to simple, repetitive, and routine tasks with simple decision making. Defendant "[a]ssum[es] arguendo that Plaintiff's argument is correct," and argues only that the ALJ's decision nonetheless is supported by substantial evidence to the extent that disregarding the job of document preparer, "a significant number of jobs would remain to meet the Commissioner's burden of production at step five."

The Court agrees with Defendant: any error is harmless to the extent the other two jobs which the ALJ found Plaintiff could perform based on the vocational expert's testimony exist in a significant number (which Plaintiff does not otherwise challenge). *See Carneal v. Comm'r, Soc. Sec'y Admin.*, No. 4:21-00271-CV-RK, 2022 WL 2764934, at *5 (W.D. Mo. July 15, 2022); *Abigail R. Kijakazi*, No. 8:21CV13, 2022 WL 19676, at *7 (D. Neb. Jan. 3, 2022); *Vansel v. Saul*, No. 4:19-CV-00777-DGK, 2020 WL 6930109, at *3 (W.D. Mo. Nov. 24, 2020); *O'Connell v. Saul*, No. 18-CV-2072-KEM, 2019 WL 4784613, at *12 (N.D. Iowa Sept. 30, 2019); *Barron v. Berryhill*, No. 1:16-cv-00097-AGF, 2017 WL 3421501, at *5 (E.D. Mo. Aug. 9, 2017); *Mayfield v. Colvin*, No. 4:14-CV-00740-NKL, 2015 WL 3460558, at *10-11 (W.D. Mo. June 1, 2015). The Court finds no reversible error here, either.

### IV. Closed Period of Disability

In her final point on appeal, Plaintiff argues that the ALJ erred by failing to consider a closed period of disability of October 18, 2018 (her alleged onset date) and September 2020 or October 28, 2020, considering Plaintiff's left hip avascular necrosis for which she received a total left hip replacement in August 2020 and was ultimately released from physical therapy on October 28, 2020. Defendant argues that the limitations stemming from her left hip avascular necrosis "were accounted for" in the ALJ's RFC finding of an ability to perform sedentary work with additional postural and environmental limitations. Social Security disability benefits may be awarded

> either on a continuing basis or, where a once-disabling condition later ceases to be disabling, for a "closed period." To qualify for a closed period of disability, the disabling condition must last for at least twelve months. 42 U.S.C. § 423(d)(A)[.] However, even within a closed period, a claimant must still meet the definition of disability.

*Overy v. Berryhill*, No. 4:18 CV 264 ACL, 2019 WL 1379965, at *10 (E.D. Mo. Mar. 27, 2019) (cleaned up) (other citations omitted). The Court notes that the closed period of disability Plaintiff asserts the ALJ should have considered (but did not) is essentially the same period of disability the

8

ALJ did consider. The ALJ found that the left hip avascular necrosis, status-post arthroplasty was a severe impairment and considered this impairment in formulating Plaintiff's RFC. The Court is not persuaded that the ALJ erred by failing to consider a closed period of disability from October 18, 2018, to September 2020 or October 28, 2020, under these circumstances. In addition, the Court notes that the Appeals Council found specifically as follows: "The claimant is not disabled as defined in the Social Security Act *at any time* from October 18, 2018, the alleged onset date, through December 31, 2020, the date last insured." (Tr. at 7.) The Court does not find reversible error on this point.

## Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that the Commissioner's decision is **AFFIRMED**.

    **IT IS SO ORDERED**.

                                                         s/ Roseann A. Ketchmark
                                                         ROSEANN A. KETCHMARK, JUDGE
                                                         UNITED STATES DISTRICT COURT

DATED: August 26, 2024